IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Lauren Yu, individually and on behalf of all others similarly situated,<br><br>                   Plaintiff,<br><br>            - against -<br><br>Dreyer's Grand Ice Cream, Inc.,<br><br>                   Defendant | 1:20-cv-08512-AJN<br><br>First Amended<br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Dreyer's Grand Ice Cream, Inc. ("defendant") manufactures, markets and sells ice cream bars purporting to be dipped in milk chocolate and covered with almonds and toffee under the Häagen-Dazs brand ("Product").

2. Though the front label identifies the Product as "Coffee Ice Cream Dipped in Rich Milk Chocolate, Almonds and Toffee," with a picture of the Product, it does not contain milk chocolate as this is understood by reasonable consumers.



3. The representation that the ice cream bar is dipped in "rich milk chocolate" is false, deceptive and misleading because the Product does not contain chocolate.

4. Chocolate is defined by Merriam-Webster as a food "prepared from ground roasted cacao beans."[1]

5. The cacao beans are "Fermented, roasted, [and] shelled," producing cacao nibs.

6. The nibs are ground to produce cocoa mass or chocolate liquor and then combined with dairy ingredients, sweeteners and flavorings.[2]

---

[1] Merriam-Webster, chocolate.
[2] The Free Dicttionary, chocolate.

7. The government has defined chocolate identically to its dictionary definition – made chiefly from cacao ingredients with a small amount of permitted optional ingredients. *See* 21 C.F.R. § 163.13(a).

8. The optional ingredients include dairy ingredients, sweeteners and flavorings. 21 C.F.R. § 163.124(b).

9. New York has adopted all federal regulations for the labeling of chocolate, so that any failure to comply with federal regulations is also a violation of New York regulations.

10. The reason the optional ingredients are restricted is to prevent addition of lower quality ingredients in place of high-quality cacao ingredients.

11. Consumers want and expect that chocolate will be made from cacao beans, instead of vegetable oils.

12. The absence of "milk chocolate" is evident from the fine print on the ingredient list, which specifies that instead of milk chocolate, consumers receive "MILK CHOCOLATE AND VEGETABLE OIL COATING."

> **INGREDIENTS: COFFEE ICE CREAM:** CREAM, SKIM MILK, SUGAR, EGG YOLKS, COFFEE. **MILK CHOCOLATE AND VEGETABLE OIL COATING WITH ALMONDS AND TOFFEE:** MILK CHOCOLATE (SUGAR, WHOLE MILK POWDER, CHOCOLATE, COCOA BUTTER, SOY LECITHIN, VANILLA EXTRACT), COCONUT OIL, ALMONDS ROASTED IN VEGETABLE OIL (ALMONDS, SAFFLOWER OIL), TOFFEE (CORN SYRUP, SUGAR, BUTTER [CREAM, SALT], BROWN SUGAR, ALMONDS, BAKING SODA, SOY LECITHIN, SALT).

**INGREDIENTS: COFFEE ICE CREAM:** CREAM, SKIM MILK, SUGAR, EGG YOLKS, COFFEE. **MILK CHOCOLATE AND VEGETABLE OIL COATING WITH ALMONDS AND TOFFEE:** MILK CHOCOLATE (SUGAR, WHOLE MILK POWDER, CHOCOLATE, COCOA BUTTER, SOY LECITHIN, VANILLA EXTRACT), COCONUT OIL, ALMONDS ROASTED IN VEGETABLE OIL (ALMONDS, SAFFLOWER OIL), TOFFEE (CORN SYRUP, SUGAR, BUTTER [CREAM, SALT], BROWN SUGAR, ALMONDS, BAKING SODA, SOY LECITHIN, SALT).

13. While the first ingredient in the coating is listed as "milk chocolate," the second ingredient is "coconut oil."

14. The amount of coconut oil in the "chocolate" coating is estimated at thirty percent, based upon an analysis of industry product specifications.

15. Approximately fifteen years ago, a group of multinational conglomerates, including defendant's predecessor and former parent company, Nestle, sought to re-define chocolate to contain vegetable oils in place of cacao ingredients.

16. The backlash to this proposal was significant.

17. According to one chocolatier "This is all a question of money. If they can take something and dilute it, and still get the taste [for] a fraction of the cost, that's what they want. But the taste is not the same, he and others said."[3]

18. Since the Product's front label represents the Product contains "rich milk chocolate" without qualification, consumers expect that it only has chocolate ingredients, when this is not accurate.

19. The proposal of defendant's predecessor was defeated, in part due to chocolate colossus and industry leader, Mars Wrigley:

> At Mars, the consumer is our boss, and American consumers are passionate about chocolate. They don't want anyone to change the chocolate they've enjoyed for generations…As a privately held company, we have the freedom to invest in the highest quality chocolate and deliver what consumers want.[4]

20. The 2007 effort to substitute vegetable oils in place of chocolate was only the most recent effort to substitute cacao beans with lower quality ingredients.

---

[3] Bob LaMendola, Staff Writer, Chocoholics in an Uproar: Don't Change the Recipe, South Florida Sun-Sentinel, Apr. 30, 2007.
[4] Mars US Announces Support for Current Chocolate Standard of Identity, Press Release, September 17, 2007.

4

21. According to historians of chocolate:

Mixing unnatural ingredients with chocolate – with the intent of extending the quantity of raw product and defrauding customers – has a long history. During the pre-Columbian era, "bones of giants" (possibly vertebrate fossils) sometimes were ground and mixed with chocolate. It is difficult, sometimes, to differentiate between adulteration in the sense of adding external products during the preparation of medicinal or culinary chocolates and adulteration in the sense of "cheating" the consumer. In other instances, however, the intent is clear. Chocolate, being an expensive item, commonly was mixed with a variety of "extenders" to reduce cost and to increase the profits of unscrupulous manufacturers/merchants.[5]

22. There is nothing inherently wrong with adding lower quality ingredients to chocolate, as long as it is clearly presented to consumers, who are free to choose.

23. To prevent consumer deception, Congress required that where cacao ingredients were substituted with lower quality vegetable oils, the food or ingredient is prominently labeled as "'milk chocolate and ___ oil coating', the blank being filled in with the common or usual name of the specific vegetable fat used." 21 C.F.R. § 163.155(c).

24. Defendant is aware of the accurate and truthful name of the "chocolate" coating, since it uses this designation on the ingredient list: "MILK CHOCOLATE AND VEGETABLE OIL COATING."

25. It is misleading to describe the Product, via its statement of identity, as "Coffee Ice Cream Dipped in Rich Milk Chocolate, Almonds and Toffee," because the addition of vegetable oil fundamentally changes the nature of the bar's coating. 21 C.F.R. § 101.3(b).

26. First, chocolate ingredients are several times more expensive than vegetable oils.

---

[5] L.P. Brindle and B.F. Olsen, Adulteration – The Dark World of 'Dirty' Chocolate," in Chocolate (eds. L.E. Grivetti and H.Y. Shapiro) (2009).

27. According to chocolate experts, though cocoa butter makes up about one-fourth of chocolate, it costs more than three times as much as vegetable oil.

28. Second, chocolate provides greater satiety than vegetable oils – it fills you up instead of leaving the consumer feeling like they did not eat anything.

29. Third, consumers know that vegetable oils result in a waxy and oily mouthfeel and leave an aftertaste.

30. Fourth, the creamy and smooth taste of chocolate is eliminated when vegetable oils are added.

31. According to Jean Hammond of Kilwin's Ice Cream Shops:

Just that little bit of vegetable oil changes the mouthfeel. It makes it taste waxy.
You would just be stunned at the difference in taste. They're just not comparable
We take chocolate just very, very seriously. Chocolate-ish is not good enough.

32. Fifth, chocolate has health and nutrition benefits that are absent from vegetable oils.

33. Numerous studies have indicated that the flavonoids in cacao beans – and in chocolate – positively effect the heart and arteries against harmful free radicals.

34. Additionally, cocoa butter does not raise cholesterol or have artery-clogging trans-fats which are present in vegetable oils and linked to greater incidence of heart disease.

35. Though cocoa butter and vegetable oils both contain fat, the fat in cocoa butter is unsaturated and relatively heart healthy, in contrast to saturated fats in vegetable oils.

36. Consumption of vegetable oils is linked to numerous health problems, like increased chances of heart disease.

37. Consumption of chocolate does not result in elevated levels of cholesterol which is a consequence of vegetable oils.

38. Sixth, surveys have consistently shown that typical American consumers do not

expect foods or ingredients in foods that are represented as "chocolate" to contain vegetable oils.

39. The percentage of consumers who did not expect vegetable oils increased significantly when the product in question was made by Häagen-Dazs, a premium brand.

40. Seventh, chocolate is a natural ingredient, which is made through fermentation, roasting and grinding of cacao beans, and mixing them with flavorings, dairy ingredients and sweeteners.

41. In contrast, the coconut oil used by defendant is not a natural but a synthetic ingredient since it is subject to hydrogenation in the presence of chemical catalysts, such as nickel and cadmium.

42. Consumers are increasingly avoiding synthetic ingredients and prefer simple ingredients like chocolate to their overly processed counterparts.

43. Consumers of a high-end premium ice cream bar that claims to be dipped in "milk chocolate" will not be so distrustful such as to scrutinize the fine print of the ingredient list and uncover the deception, because there is no ambiguity.

44. The average consumer spends seconds choosing between similar foods, and relies on consistent, truthful labeling for the confidence to make quick buying decisions.

45. Reasonable consumers must and do rely on defendant to honestly describe the components and features of the Product.

46. Defendant misrepresented the Product through affirmative statements, half-truths, and omissions.

47. Defendant sold more of the Products and at a higher prices than it would have in absence of this misconduct, resulting in additional profits at the expense of consumers.

48. Had Plaintiff and proposed class members known the truth, they would not have

bought the Product or would have paid less for it.

49. Plaintiff paid more for the Product based on the representations than she would have otherwise paid.

50. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $5.99 for three 3 OZ bars, excluding tax, compared to other similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## Jurisdiction and Venue

51. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

52. Plaintiff Lauren Yu is a citizen of New York.

53. Defendant Dreyer's Grand Ice Cream, Inc. is a Delaware corporation with a principal place of business in Oakland, Alameda County, California.

54. Diversity exists because plaintiff Lauren Yu and defendant are citizens of different states.

55. Upon information and belief, sales of the Product and any available statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

56. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred here – the purchase of plaintiff and her experiences identified here.

## Parties

57. Plaintiff Lauren Yu is a citizen of New York, New York County, New York.

58. Defendant Dreyer's Grand Ice Cream, Inc. is a Delaware corporation with a principal

place of business in Oakland, California, Alameda County.

59. Defendant is the leading seller of premium frozen dairy desserts under the Häagen-Dazs brand.

60. The Coffee Ice Cream Dipped in Rich Milk Chocolate, Almonds and Toffee bars are sold in tens of thousands of stores nationwide.

61. This includes warehouse clubs, where they are sold in cases by the hundred, supermarkets in boxes of three, and individually at convenience stores, gas stations and drug stores.

62. Plaintiff purchased the Coffee Ice Cream Dipped in Rich Milk Chocolate, Almonds and Toffee on numerous occasions within the statutes of limitations for each cause of action, at stores including Key Food, 52 Avenue A, New York, NY 10009 and Rite Aid, 81 1st Avenue, New York, NY 10003, during May, June and July of 2020, among other times.

63. Plaintiff bought the Product because she wanted a food which contained milk chocolate which she understood as not containing vegetable oils and relied on the front label representation that the Product was dipped in "rich milk chocolate."

64. Since the Product is from a premium brand, Plaintiff had no reason to suspect the substitution of vegetable oil for chocolate and would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

65. The Product was worth less than what Plaintiff and consumers paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

66. Plaintiff paid more for the Product than she would have paid otherwise.

67. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations about its components and ingredients are consistent with its representations.

Class Allegations

68. The class will consist of all purchasers of the Product who reside in New York, Virginia, Delaware and Maine during the applicable statutes of limitations.

69. Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

70. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

71. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

72. Plaintiff is an adequate representative because her interests do not conflict with other members.

73. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

74. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

75. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

76. Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350

(Consumer Protection Statute)

77. Plaintiff incorporates by reference all preceding paragraphs.

78. Plaintiff and class members desired to purchase a product which contained milk chocolate, which they understood as not containing vegetable oils, for the reasons indicated herein.

79. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

80. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

81. Plaintiff relied on the representations of the Product as containing milk chocolate.

82. Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

83. The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it possessed functional, nutritional, organoleptic, sensory and qualitative attributes which it did not.

84. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

85. This duty is based on Defendant's outsized role in the market for this type of Product – the most esteemed and premium brand.

86. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

87. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices over the past several years.

88. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as

advertised.

89.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Negligent Misrepresentation

90.     Defendant had a duty to truthfully represent the Product, which it breached.

91.     This duty is based on defendant's position, holding itself out as having special knowledge and experience in the sale of the product type – the owner of the premium Häagen-Dazs brand.

92.     The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

93.     Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchases of the Product.

94.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

95.     Defendant misrepresented and/or omitted the attributes and qualities of the Product.

96.     Defendant's fraudulent intent is evinced by its failure to accurately disclose these issues when it knew not doing so would mislead consumers.

<u>Unjust Enrichment</u>

97.     Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   April 26, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104

Tel: (516) 268-7080<br>
Fax: (516) 234-7800<br>
spencer@spencersheehan.com