UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LAUREN YU, *individually and on behalf of
all others similarly situated*,

Plaintiff,

– *against* –

DREYER'S GRAND ICE CREAM, INC.,

Defendant.

**OPINION & ORDER**

20 Civ. 8512 (ER)

RAMOS, D.J.:

Lauren Yu brings this putative class action against Dreyer's Grand Ice Cream, Inc. ("Dreyer's"), alleging that the representations on the label of certain Dreyer's ice cream bars sold under its Häagen-Dazs brand are misleading, because the bars' chocolate coating contains vegetable oil.[1]  Yu seeks injunctive relief and monetary damages for:  (1) violations of Sections 349 and 350 of the New York General Business Law ("GBL"), which prohibit deceptive business practices and false advertising; (2) breach of express warranty; (3) breach of the implied warranty of merchantability; (4) violation of the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* ("MMWA"); (5) fraud; and (6) unjust enrichment.  Yu brings this action on behalf of a putative class of similarly situated individuals.

Before the Court is Dreyer's motion to dismiss the First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[2]  For the reasons set forth below, the motion to dismiss is GRANTED.

---

[1] Yu's case is identical to at least two other cases brought by Plaintiff's counsel in this District—*Beers v. Mars Wrigley Confectionary US, LLC*, No. 21 Civ. 2 (CS), and *Mitchell v. Whole Foods Market Group, Inc.*, No. 20 Civ. 8496 (ER)—except that the ice cream bars at issue here contain coffee ice cream under the chocolate coating rather than vanilla ice cream.  Plaintiff's complaint meets the same fate.

[2] Unless otherwise noted, citations to "¶ _" refer to Yu's First Amended Complaint ("FAC"), Doc. 22.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   Factual Background

Dreyer's is a Delaware corporation with a principal place of business in Oakland, California.  ¶¶ 53, 58.  It is a leading seller of premium frozen dairy desserts under the Häagen-Dazs brand.  ¶ 59.  Dreyer's sells its Häagen-Dazs Coffee Ice Cream Dipped in Rich Milk Chocolate, Almonds, and Toffee bars (the "Product") in tens of thousands of stores nationwide, including warehouse club stores, supermarkets, convenience stores, gas stations, and drug stores. ¶¶ 60–61.

In May, June, and July of 2020, among other times, Yu, a resident of Manhattan, purchased the Product on numerous occasions, including at a Key Food grocery store and a Rite Aid drug store in Manhattan.  ¶¶ 57, 62.

The Product consists of "ice cream bars purporting to be dipped in milk chocolate and covered with almonds and toffee."  ¶ 1.  The representations on the front label identify the Product as "coffee ice cream dipped in rich milk chocolate, almonds, and toffee."  ¶ 2.  Photos of the Product's label and its ingredient list, as included in the FAC, are below.



INGREDIENTS: COFFEE ICE CREAM: CREAM, SKIM MILK, SUGAR, EGG YOLKS, COFFEE. **MILK CHOCOLATE AND VEGETABLE OIL COATING WITH ALMONDS AND TOFFEE:** MILK CHOCOLATE (SUGAR, WHOLE MILK POWDER, CHOCOLATE, COCOA BUTTER, SOY LECITHIN, VANILLA EXTRACT), COCONUT OIL, ALMONDS ROASTED IN VEGETABLE OIL (ALMONDS, SAFFLOWER OIL), TOFFEE (CORN SYRUP, SUGAR, BUTTER [CREAM, SALT], BROWN SUGAR, ALMONDS, BAKING SODA, SOY LECITHIN, SALT).

Yu alleges that the Product's front label is misleading because the representation that the ice cream is "dipped in 'rich milk chocolate,'" is false, since the addition of vegetable oil to the chocolate coating "fundamentally changes the nature of the bar's coating." ¶ 25.  According to the FAC, chocolate is "a food prepared from ground roasted cacao beans," that are ground to produce cocoa mass or chocolate liquor and then combined with dairy ingredients, sweetener, and flavorings.  ¶¶ 3–6.  With respect to the Product's front label, Yu claims that since it "represents the Product contains 'rich milk chocolate' without qualification, consumers expect that it only has chocolate ingredients, when this is not accurate." ¶ 18.  With respect to the ingredient list, which indicates that the Product contains coconut oil and vegetable oil, Yu argues that "[c]onsumers of a high-end premium ice cream bar that claims to be dipped in 'milk chocolate' will not be so distrustful such as to scrutinize the fine print of the ingredient list and uncover the deception," because the label is unambiguous.  ¶ 43.  She claims that the average consumer "spends seconds choosing between similar foods," and thus will not examine the fine print of the ingredient list in order to confirm that the front label is accurate.  ¶ 44.

The Product is sold at a "premium price," approximately $5.99 for a package of three three-ounce bars.  ¶ 50.  Yu contends that as a result of the "false and misleading representations," Dreyer's sells the Product at a higher price than other similar products represented in a non-misleading way, and higher than it would be sold "absent the misleading representations and omissions."  *Id.*  Yu further alleges that she, as well as the proposed class members consisting of all purchasers of the Product who reside in New York, Virginia, Delaware, and Maine during the applicable statutes of limitations, would not have bought the Product or would have paid less for it if they had known the truth.  ¶¶ 68, 82, 89, 94.  Yu alleges

that she intends to purchase the Product again when she can do so with the assurance that the representations on its labeling are consistent with its ingredients.  ¶ 67.

### B.    Procedural History

Yu brought this action against Froneri US, Inc., on October 13, 2020.  Doc. 1.  On March 5, 2021, Defendant moved to dismiss the complaint and noted that Yu had sued the wrong entity.[3]  Docs. 14, 15.  Yu filed the FAC against Dreyer's, the correct Defendant, on April 26, 2021.  Doc. 22.  On May 26, 2021, Dreyer's moved to dismiss the FAC pursuant to Rule 12(b)(6).  Doc. 23.

## II.    LEGAL STANDARD

Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Koch v. Christie's Int'l, PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  Federal Rule of Civil Procedure 8 "marks a notable and generous

---

[3] Judge Alison J. Nathan, who previously presided over the case, denied Defendant's first motion to dismiss as moot on July 2, 2021.  Doc. 27.

departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.  If the plaintiff has not "nudged [the] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## III.   DISCUSSION

### A.   New York General Business Law Claims

Section 349 of the GBL prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce . . . ."  Section 350 of the GBL prohibits "[f]alse advertising in the conduct of any business, trade or commerce . . . ."  While the standard for recovery under Section 350 is specific to false advertising, it is otherwise identical to Section 349.  *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021).  To state a claim under either Section 349 or Section 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 944 N.Y.S.2d 452, 452 (2012)).  While plaintiffs are not required to meet the heightened pleading requirements of Rule 9(b) for their claims, *Cosgrove*, 520 F. Supp. 3d at 575–76, "plaintiffs must do more than plausibly allege that a 'label might conceivably be misunderstood by some few consumers.'" *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021) (quoting *Sarr v. BEF Foods, Inc.*, No. 18 Civ. 6409 (ARR) (RLM), 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020) (internal quotation marks omitted)).  Plaintiffs must "plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in

the circumstances, could be misled." *Id.* (quoting *Sarr*, 2020 WL 729883, at *3 (internal quotation marks omitted)).

"The primary evidence in a consumer-fraud case arising out of allegedly false advertising is, of course, the advertising itself." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013).  In order to determine whether a reasonable consumer would have been misled by an advertisement, "context is crucial." *Id.*  "For example, under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Id.*  "Although the question of whether a business practice or advertisement is misleading to a reasonable consumer is generally a question of fact, it is 'well settled that a court may determine as a matter of law that an allegedly deceptive [practice or advertisement] would not have misled a reasonable consumer.'" *Wynn v. Topco Assocs., LLC*, No. 19 Civ. 11104 (RA), 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (internal citation omitted) (quoting *Fink*, 714 F.3d at 741).

### i.      Alleged Violations of Federal Regulations

As Dreyer's points out, the Food, Drug, and Cosmetic Act (the "FDCA"), pursuant to which the United States Food and Drug Administration (the "FDA") issues regulations, does not create a private right of action.  *See PDK Labs Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997).  While Yu argues that she is not pursuing a private action for violations of the FDCA and is instead bringing separate claims under the New York GBL, the parties dispute whether her GBL claims are an attempt to privately enforce FDA regulations instead of premised on consumer protection grounds.

A plaintiff may not circumvent a lack of a private right of action in one statute by incorporating allegations of its violations into claims pleaded under another statute that does allow for a private right of action.  *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 579

(S.D.N.Y. 2021) (citing *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199 (2d Cir. 2005);

*Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001)); *Pichardo v. Only What You Need,*

*Inc.*, No. 20 Civ. 493 (VEC), 2020 WL 6323775, at *3 n.6 (S.D.N.Y. Oct. 27, 2020) (collecting

cases).

   The Second Circuit has held that "a GBL claim is viable where the plaintiff 'make[s] a

free-standing claim of deceptiveness . . . that happens to overlap with a possible claim' under

another statute that is not independently actionable . . . ." *Nick's Garage, Inc. v. Progressive Cas.*

*Ins. Co.*, 875 F.3d 107, 127 (2d Cir. 2017) (quoting *Broder*, 418 F.3d at 200).  Thus, regardless of

whether a defendant's conduct constitutes a violation of FDA regulations, to the extent that the

conduct is inherently deceptive, it supports an actionable claim under the GBL.  *Cosgrove*, 520 F.

Supp. 3d at 576.  When a plaintiff argues that federal labeling regulations constitute evidence of

what consumers expect a product's label to communicate about its contents, courts have

generally held that the complaint must adequately allege that "reasonable consumers are aware

of these complex regulations," and that "they incorporate the regulations into their day-to-day

marketplace expectations."  *Wynn*, 2021 WL 168541, at *3; *see, e.g.*, *Twohig*, 519 F. Supp. 3d at

164.  Where there is "no extrinsic evidence that the perceptions of ordinary consumers align with

these various labeling standards," the federal regulations cited by the plaintiff are insufficient to

establish that a consumer is likely to be misled by the alleged lack of conformity with the

regulations.  *Wynn*, 2021 WL 168541, at *3 (quoting *N. Am. Olive Oil Ass'n v. Kangadis Food*

*Inc.*, 962 F. Supp. 2d 514, 519 (S.D.N.Y. 2013)); *see also Steele v. Wegmans Food Markets, Inc.*,

472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020) ("The point here is not conformity with this or that

standard (which is left to the authorities to regulate) but whether the marketing presentation was

deceptive.").

The FAC refers to FDA regulations allegedly related to chocolate.  ¶¶ 7 (citing 21 C.F.R. § 163.13(a)),[4] 8 (citing 21 C.F.R. § 163.124(b)), 23 (citing 21 C.F.R. § 163.155(c)), 25 (citing 21 C.F.R. § 101.3(b)).  Yu's allegations rely on the purported violations of these regulations to establish consumer deception under the GBL claims.  *See, e.g.*, ¶¶ 3, 23, 25, 43.  Even accepting Yu's argument that the Product's labeling violates the federal regulations, which Dreyer's disputes,[5] the FAC does not adequately plead that reasonable consumers are aware of these regulations, nor has Yu alleged that consumers incorporate such regulations into their marketplace expectations.  *See* Doc. 24 at 17–18.  Therefore, the cited federal regulations are insufficient to establish that a reasonable consumer is likely to be misled by the representations regarding chocolate on the Product's label.  *See, e.g.*, *Twohig*, 519 F. Supp. 3d at 164; *Wynn*, 2021 WL 168541, at *3.

Nevertheless, drawing all inferences in Yu's favor, she arguably alleges certain "free-standing claims of deceptiveness," separate and apart from the Product's alleged failure to comply with the FDCA and applicable regulations.  For example, Yu's complaint includes the definitions of chocolate from Merriam-Webster and "the Free Dicttionary," ¶¶ 4–6, fifteen-year-old news articles and comments attributed to consumers and chocolate industry professionals relating to a 2007 industry proposal to re-define chocolate as containing vegetable oils, ¶¶ 15–20, quotations from "historians of chocolate" and "Jean Hammond of Kilwin's Ice Cream Shops," ¶¶ 21, 31, and references to "surveys" of "typical American consumers," ¶ 38.  These allegations are arguably independent of the alleged violations of the federal regulations.  Therefore, the Court

---

[4] This citation appears to be in error, as the FDA definition of milk chocolate is found at 21 C.F.R. § 163.130.

[5] Dreyer's contends that there was no violation of the applicable FDA regulations.  Doc. 24 at 9–14.  The Court need not resolve this issue, because "claims regarding FDA regulations are not relevant to determining whether a label is deceptive or misleading under GBL §§ 349–50."  *Pichardo v. Only What You Need, Inc.*, No. 20 Civ. 493 (VEC), 2020 WL 6323775, at *3 n.6 (S.D.N.Y. Oct. 27, 2020).

proceeds to analyze the claims without relying on the purported violations of the FDCA.  *See*

*Colpitts*, 527 F. Supp. 3d at 580 (collecting cases).[6]

### ii.    The Product's Label

Yu argues that the phrase "rich milk chocolate" on the Product's label is deceptive

because it implies that the Product's coating contains only cacao ingredients rather than

vegetable or coconut oil, when, in fact, the coating contains both chocolate and oils.  Doc. 25 at

9–14; *see also* ¶¶ 3, 18 ("[s]ince the product's front label represents the Product contains 'rich

milk chocolate' without qualification, consumers expect that it only has chocolate ingredients,

when this is not accurate"), 25, 63.  As several district courts have held, this argument fails,

because Yu does not seriously dispute that the Product's coating contains chocolate and because

no reasonable consumer would understand the representations on the Product's label to mean that

the coating contained only chocolate.[7]  *See, e.g.*, *Beers v. Mars Wrigley Confectionary US, LLC*,

No. 21 Civ 2 (CS), 2022 WL 493555, at *4 (S.D.N.Y. Feb. 17, 2022) (dismissing identical

claims brought by the same attorney arising from the presence of vegetable oils in addition to

chocolate in an ice cream bar's coating); *Puri v. Costco Wholesale Corp.*, No. 21 Civ. 1202

(EJD), 2021 WL 6000078 (N.D. Cal. Dec. 20, 2021) (same).

*First*, Dreyer's points to a line of decisions granting motions to dismiss complaints

brought by the same attorney who represents Yu, alleging that vanilla-flavored products labelled

"vanilla" were misleading, because they contained other sources of vanilla flavor in addition to

---

[6] Because Yu's GBL claims are dismissed, the Court need not address Dreyer's argument that these claims are expressly preempted by the FDCA.  *See, e.g.*, *Beers v. Mars Wrigley Confectionery US, LLC*, No. 21 Civ 2 (CS), 2022 WL 493555, at *7 n.8 (S.D.N.Y. Feb. 17, 2022).

[7] Confusingly, Yu's FAC alleges that the Product's labeling is deceptive both because the Product does not contain chocolate, ¶¶ 2–3, and because it does not contain only chocolate but also contains oil, ¶¶ 18, 25.  However, in her opposition, Yu does not argue that the Product's coating does not contain chocolate, but rather that the addition of vegetable oil renders the "rich milk chocolate" description deceptive.  *See* Doc. 25.

vanilla extract.[8]  Yu argues that the vanilla caselaw is distinguishable, because those cases relied on the fact that vanilla is a flavor, as opposed to chocolate, which is a food.  Doc. 25 at 11–13. Contrary to Yu's assertion, the Court finds the reasoning applied in the vanilla cases persuasive. Courts in this district have held that the label "vanilla" on a product is not materially misleading where the product itself lacks actual vanilla beans or vanilla bean extract, because "vanilla" may be commonly used as a flavor.  *See, e.g.*, *Colpitts*, 527 F. Supp. 3d at 582 ("[T]he word 'vanilla' can be used as [ ] both a noun and an adjective, and can be commonly understood to denote a flavor . . . ."); *Wynn*, 2021 WL 168541, at *4 ("[The product's front label] makes no representations whatsoever about the source of the vanilla flavor or the ingredients constituting it . . . ."); *Pichardo*, 2020 WL 6323775, at *5 ("Had Defendant's label contained other qualifying words, such as 'made with,' 'contains,' or 'vanilla beans,' a reasonable consumer might be led to believe that vanilla from vanilla extract is the exclusive or primary flavor ingredient, but that is not the case here.").  Courts have applied the same analytical framework to other flavors.[9]

Here, the word "chocolate" and the representations regarding chocolate arguably do not convey a specific representation about the source of the chocolate flavor.[10]  Like vanilla, chocolate can be used as both a noun and an adjective and can be commonly understood to denote a flavor.  *See Colpitts*, 527 F. Supp. 3d at 582.  Furthermore, the Product makes no representations about the ingredients constituting the chocolate flavor, nor does it use language

---

[8] *See Cosgrove*, 520 F. Supp. 3d 562; *Twohig*, 519 F. Supp. 3d 154; *Wynn*, 2021 WL 168541; *Steele*, 472 F. Supp. 3d 47; *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795 (S.D.N.Y. 2021); *Cosgrove v. Blue Diamond Growers*, No. 19 Civ. 8993 (VM), 2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020); *Pichardo*, 2020 WL 6323775.

[9] *See, e.g.*, *Gilleo v. J.M. Smucker Co.*, No. 20 Civ. 2519 (PMH), 2021 WL 4341056, at *6 (S.D.N.Y. Sept. 23, 2021) (caramel flavor); *Cooper v. Anheuser-Busch, LLC*, No. 20 Civ. 7451 (KMK), 2021 WL 3501203, at *9 (S.D.N.Y. Aug. 9, 2021) (cocktail flavors); *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19–20 (2d Cir. 2018) (summary order) (truffle flavor).

[10] The Court notes that while chocolate is both a flavor and an ingredient, a reasonable consumer could expect that the source of the chocolate flavor was actual chocolate.  *See Campbell v. Whole Foods Mkt.  Grp., Inc.*, 516 F. Supp. 3d 370, 385 (S.D.N.Y. 2021).

such as "made with" or "contains."  *See, e.g.*, *Wynn*, 2021 WL 168541, at *4; *Cosgrove v. Blue Diamond Growers*, No. 19 Civ. 8993 (VM), 2020 WL 7211218, at *3–4 (S.D.N.Y. Dec. 7, 2020); *Pichardo*, 2020 WL 6323775, at *5.  "The absence or presence of the words 'made with' can make a substantial difference where the relevant term is both an ingredient and a flavor," because "'[m]ade with' designates a product as an ingredient."  *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 383 n.4 (S.D.N.Y. 2021).  Nevertheless, because the Court recognizes that at least some of the representations at issue in the instant case use the word as a noun (*i.e.*, an ingredient), rather than an adjective (*i.e.*, a flavor), the Court does not rely on the "vanilla" cases.

*Second*, as Dreyer's argues, courts within this Circuit have found that under certain circumstances the use of other ingredients in addition to the ingredient identified on a product's label does not make the label deceptive.  *See, e.g.*, *Harris v. Mondelez Glob. LLC*, No. 19 Civ. 2249 (ERK) (RER), 2020 WL 4336390, at *3 (E.D.N.Y. July 28, 2020) (dismissing plaintiffs' claim that the addition of alkali diminishes the quality and taste of cocoa and therefore renders the representation "Made With Real Cocoa" misleading where the Oreos did, in fact, contain cocoa, along with other ingredients); *Sarr*, 2020 WL 729883, at *4 (dismissing plaintiffs' claim because it was implausible that a reasonable consumer would interpret "Made with Real . . . Butter" to denote that the mashed potatoes did not also contain additional fats in addition to butter, which was the predominant ingredient); *Reyes v. Crystal Farms Refrigerated Distribution Co.*, No. 18 Civ. 2250 (NGG) (RML), 2019 WL 3409883, at *3 (E.D.N.Y. July 26, 2019) (same);[11] *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 335 (E.D.N.Y. 2018) (dismissing plaintiff's claim that a representation that a juice product was "cold-pressed" was

---

[11] The Court notes that a majority of these cases concerned representations that the products were "made with" certain ingredients, language that is not at issue in the instant case.

misleading where the label did not include the modifier "only" or "exclusively" before "cold-pressed" to indicate that the juice had not undergone any other process in addition to juice-pressing);[12] *Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 341 (E.D.N.Y. 2018) (same).

Indeed, in two factually identical cases brought by Yu's attorney, apart from *Mitchell*, courts found that representations such as "with milk chocolate," "silky smooth," and "Chocolate Almond Dipped Vanilla Ice Cream Bars" on the labels of chocolate-covered ice cream bars did not suggest to the reasonable consumer that the products' coatings were made only or exclusively with chocolate. *See Beers*, 2022 WL 493555, at *4 ("Where a product highlights an ingredient on the front label, other courts have pointed to the lack of modifiers, such as 'only' or 'exclusively,' in assessing the reasonableness of claimed consumer confusion."); *Puri*, 2021 WL 6000078, at *6–7. This is particularly true in the context of ice cream bars coated in chocolate. *See Beers*, 2022 WL 493555, at *4; *Puri*, 2021 WL 6000078, at *7 ("[A] reasonable consumer would know that chocolate must be mixed with some significant amount of fat or oil to create a coating that would solidify around an ice cream bar.").[13]

As Yu acknowledges, the Product's coating does contain milk chocolate as an ingredient. *See* ¶ 13 ("While the first ingredient in the coating is listed as 'milk chocolate,' the second ingredient is 'coconut oil.'"), Doc. 25 at 17 ("[T]he description of the Product as 'milk chocolate' may be technically true, but is also misleading because it contains the one ingredient inconsistent with chocolate—vegetable oil.") To the extent Yu alleges that the chocolate is no longer "real

---

[12] Yu argues that Dreyer's "duty to investigate" argument fails in light of the Seventh Circuit's rejection of certain principles enumerated in those cases. Doc. 25 at 16–17 (citing *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468 (7th Cir. 2020)). The *Bell* holding is distinguishable, because it involved a representation that a product was "100% Grated Parmesan Cheese," which could be understood to mean "pure cheese," when it in fact contained additives. *Bell*, 982 F.3d at 482. As Dreyer's points out, here there is no claim that the Product's coating was purely or exclusively chocolate. Doc. 26 at 8–9.

[13] Dreyer's explains, "it would be highly impractical to produce a frozen ice cream dessert by simply dipping ice cream into melted chocolate because cacao fat has a high melting point relative to the ice cream." Doc. 24 at 17.

chocolate" as a result of the presence of coconut or vegetable oil, the Court does not find this argument persuasive. *See Harris*, 2020 WL 4336390, at *3. Furthermore, as Dreyer's points out, the Product's label does not include any modifiers stating that the coating is "only," "exclusively," or "100%" chocolate, nor does it state anything about the ingredient composition of the Product's coating. *See id.*; *Campbell*, 322 F. Supp. 3d at 341. Thus, the Court finds that a reasonable consumer would not be misled into believing that the Product's coating did not contain any vegetable oils. *See Beers*, 2022 WL 493555, at *4 (finding that the label did not lead reasonable consumers to conclude anything about the particular form of chocolate, the absence of other ingredients such as vegetable oil, or whether the coating contained a greater proportion of chocolate); *Puri*, 2021 WL 6000078, at *6–7 (same).

The cases on which Yu relies are inapposite. In *Mantikas v. Kellogg Co.*, the plaintiffs alleged that Cheez-It crackers that were labeled "whole grain" and "made with whole grain" would lead a reasonable consumer to believe that the grain was exclusively, or at least predominately, whole grain, when, in fact, the grain in the product was primarily enriched white flour. 910 F.3d 633, 634 (2d Cir. 2018). The Second Circuit held that although the crackers did contain whole grain, the representations were nonetheless misleading, because they "communicate[d] to the reasonable consumer that the grain in the product [was] predominantly, if not entirely, *whole* grain." *Id.* at 637. Unlike in *Mantikas*, the representations here do not include any modifiers such as "made with." *See id.* at 638. Moreover, in contrast to *Mantikas*, where the quantity of enriched white flour exceeded the quantity of whole grain, Yu does not allege that the Product's coating contains more vegetable oil than the ingredients from cacao beans. *See id.* In fact, as Yu acknowledges, the ingredient list identifies the ingredients in the Product as a whole and, specifically, in the chocolate coating: first milk chocolate (comprised of

sugar, whole milk powder, chocolate, cocoa butter, soy lecithin, vanilla extract), then coconut oil, then other ingredients.  ¶¶ 12–13.[14]  Nor does Yu allege that the coconut oil was used as a substitute in lieu of cocoa butter, *see Beers*, 2022 WL 493555, at *3, 6, and in fact cocoa butter is listed as an ingredient apart from coconut oil.  Accordingly, the Court finds that *Mantikas* is distinguishable.  *See Beers*, 2022 WL 493555, at *5 ("*Mantikas* is also distinguishable where – as here – text on the front label refers to or emphasizes a product's predominant ingredient, even if other ingredients are present. . . . [T]his case – where milk chocolate is in fact the leading ingredient in the coating – is distinguishable from *Campbell* and *Mantikas*." (collecting cases)); *Sarr*, 2020 WL 729883, at *4 (same); *Reyes*, 2019 WL 3409883, at *4 (same).[15]

Yu fails to plausibly allege that a reasonable consumer would conclude that the representations regarding chocolate on the Product's label imply that the Product's coating did not contain any coconut or vegetable oil.

### iii.    The Ingredient List

"In determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."  *Mantikas*, 910 F.3d at 636 (internal quotation marks and citation omitted).  "[U]nder certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception."  *Fink*, 714 F.3d at 742.  However, the

---

[14] Without explanation other than a reference to "an analysis of industry product specifications," Yu alleges that the Product's chocolate coating contains 30 percent coconut oil, which Yu claims is "not a natural but a synthetic ingredient since it is subject to hydrogenation in the presence of chemical catalysts[.]"  ¶¶ 14, 41.  As Dreyer's points out, the Product's label makes no claims that it contains "natural" ingredients.  Doc. 24 at 20.

[15] In her opposition, Yu cites several cases in this District following *Mantikas*.  Doc. 25 at 18–19.  The Court finds that these cases are inapposite.  *See Colpitts*, 527 F. Supp. 3d at 582–83 (finding that the word "Smokehouse®" could mislead consumers into thinking that the almonds were prepared by a natural smoking process when the product retained its smoke-flavored taste from added flavors); *Campbell*, 516 F. Supp. 3d at 376 (finding that plaintiff had plausibly alleged that the references to "graham" and "honey" on a product's packaging were likely to mislead a reasonable consumer to believe that whole-grain flour and honey were the predominant flour and sweetener, respectively); *Watson v. Kellogg Sales Co.*, No. 19 Civ. 1356 (DLC), 2019 WL 10734829, at *1 (S.D.N.Y. Oct. 29, 2019) (permitting claims under GBL with respect to the word "graham" in connection with graham crackers).

Second Circuit has held that "[r]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Mantikas*, 910 F.3d at 636 (internal quotation marks and citation omitted). Thus, "[a]n ingredients list on the back of a package cannot cure a misleading label on the front." *Colpitts*, 527 F. Supp. 3d at 583. "Applying *Mantikas*, courts have concluded that a plaintiff has plausibly alleged a deceptive statement where packaging falsely states or implies that a prominently mentioned ingredient predominates, when, in fact, that ingredient is secondary. . . . When the ingredients list confirms that the prominently mentioned ingredient does in fact predominate, courts have concluded that the complaint does not plausibly allege a deceptive statement." *Kamara v. Pepperidge Farm, Inc.*, No. 20 Civ. 9012 (PKC), 2021 WL 5234882, at *5 (S.D.N.Y. Nov. 9, 2021).

Yu's argument that the "surrounding context" of the Product label precludes reliance on the ingredient list to correct any allegedly misleading representations on the label fails. Doc. 25 at 14 (citing *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 287–88 (S.D.N.Y. 2014)). The Product's label accurately indicates that the Product's coating contains chocolate. Furthermore, Yu does not dispute that the ingredient list accurately identifies the ingredients and discloses the presence of coconut and vegetable oil. ¶¶ 12, 24, Doc. 25 at 14–16. Therefore, as Dreyer's argues and unlike the cases relied upon by Yu in which the product's packaging contained misleading representations, the "ingredient list contains more detailed information about the [P]roduct that *confirms* other representations on the packaging." *Mantikas*, 910 F.3d at 636 (emphasis in original) (internal quotation marks and citation omitted); *see also Beers*, 2022 WL 493555, at *5 ("The representation that the Product is a chocolate-covered ice cream bar 'with milk chocolate' is confirmed, not contradicted by the ingredient list." (citation omitted));

*Puri*, 2021 WL 6000078, at *7 ("[T]here is no deception to be cured – [Defendant] makes no representations . . . that would deceive a reasonable consumer into believing that no vegetable oils are present in the Product's coating . . . .").

### iv.   The Consumer Survey

To demonstrate consumer expectations, Yu claims that "surveys have shown that typical American consumers do not expect foods or ingredients in foods that are represented as 'chocolate' to contain vegetable oils," and that the "percentage of customers who did not expect vegetable oils increased significantly when the product in question was made by Häagen-Dazs, a premium brand." ¶¶ 38–39.  The Court has the same questions as Dreyer's:  "Who conducted this survey?  What were respondents told?  Did respondents see the full package, including ingredient list?"  Doc. 24 at 19.  The mysterious survey lends no support to Yu's claims, [16] and her opposition does not mention it.  *See* Doc. 25.  Moreover, Yu "does not represent that the consumers in the survey would expect the Product to contain no vegetable oil, or to contain no other ingredients apart from chocolate made from cacao bean ingredients."  *Beers*, 2022 WL 493555, at *6 (dismissing the same attorney's substantially similar survey results); *see also Puri*, 2021 WL 6000078, at *7 (same); *Mitchell v. Whole Foods Mkt. Grp., Inc.*, No. 20 Civ. 8496 (ER), 2022 WL 657044, at *7 (S.D.N.Y. Mar. 4, 2022) (same).

---

[16] Neither do the unidentified "chocoholics in an uproar" described in a 2007 news article nor Jean Hammond from "Kilwin's Ice Cream Shops," which has no apparent connection to the Product at issue.  ¶¶ 16–20, 31.

v.      **Consumer Preferences**[17]

Yu further alleges that consumers generally prefer chocolate made from cacao beans, as opposed to chocolate made with vegetable oils, because of greater satiety, taste, "mouthfeel," and health and nutritional benefits.  ¶¶ 26–42.  The Amended Complaints in *Beers*, *Puri*, and *Mitchell* include nearly identical sets of allegations.  *See Mitchell*, 2022 WL 657044, at *8.  First, the Court agrees with the *Beers* and *Puri* courts that "it is simply not plausible that a reasonable consumer would purchase and eat chocolate covered ice cream bars for health or nutritive benefits or satiety value."  *Puri*, 2021 WL 6000078, at *7.  Furthermore, "[e]ven if it were, the Product's packaging makes no claims about health, nutrition, or satiety."  *Id.*  Second, to the extent that Yu's allegations relate to products in which cacao bean ingredients are replaced with vegetable oils,  she "has not plausibly alleged that vegetable oils have been used in the Product to 'replace' cacao butter."  *Beers*, 2022 WL 493555, at *6; *see, e.g.*, ¶¶ 26, 32, 34.  Third, Yu has not adequately alleged that the Product's coating has a different taste or "mouthfeel," as the relevant allegations appear to be based on comments from individuals in the chocolate confectionary industry regarding chocolate candy, not chocolate coatings.  *See, e.g.*, ¶¶ 27–31.  In fact, the FAC does not discuss Yu's experience of the taste or texture of the Product's coating at all.  *See Beers*, 2022 WL 493555, at *7.  Finally, Yu claims that since Häagen-Dazs is a "premium brand," consumers will not expect the milk chocolate coating to contain coconut oil.  ¶¶ 39, 42, 59, 64, 85, 91, Doc. 25 at 15.  However, the Court agrees with Dreyer's that Häagen-Dazs' reputation

---

[17] To establish consumer expectations, Yu relies in part on dictionary definitions of chocolate and comments from consumers and individuals in the chocolate confectionary industry.  *See* ¶¶ 4–6, 17, 19, 31; Doc. 25 at 11–12.  As the court found in *Puri*, the dictionary definitions of chocolate are inapposite, because they do not require that a food be made exclusively or primarily from cacao bean ingredients to be called "chocolate."  *See Puri*, 2021 WL 6000078, at *6.  In addition, as noted in *Puri*, Yu's reliance on comments from consumers and individuals in the chocolate confectionary industry is misplaced, as these comments are about chocolate candy, not chocolate coatings.  *See* 2021 WL 6000078, at *7 n.3.

has no bearing on whether Yu has stated a claim for deception under the GBL.  Docs. 24 at 19, 26 at 6.

Accordingly, Yu's claims pursuant to Sections 349 and 350 of the GBL are dismissed.

### B.      Breach of Express Warranty

To assert a breach of express warranty claim under New York law, a plaintiff must allege an "affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon."  *Colpitts*, 527 F. Supp. 3d at 585 (quoting *Factory Assocs. & Exps., Inc. v. Lehigh Safety Shoes Co.*, 382 F. App'x 110, 112 (2d Cir. 2010)).  Specifically, a breach of express warranty claim must allege (1) a material statement amounting to a warranty; (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller; (3) breach of this warranty; and (4) injury to the buyer caused by the breach.  *Cosgrove*, 520 F. Supp. 3d at 585.  Furthermore, an express warranty claim requires that "a buyer must provide the seller with timely notice of the alleged breach of warranty." *Campbell*, 516 F. Supp. 3d at 391 (quoting *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 244–45 (S.D.N.Y. 2020)); *see also* N.Y. U.C.C. § 2-607(3)(a) ("the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy").

First, Yu's breach of express warranty claim fails because, for the same reasons her GBL claims fail, she has not alleged that a reasonable consumer would be misled to believe that the Product does not contain coconut or vegetable oil.  *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 184–85 (E.D.N.Y. 2018), *aff'd sub nom. Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020) (summary order).  Second, Yu has not pleaded notice as required to establish a breach of express warranty claim.  Yu's allegations as to notice are that (1) "Plaintiff provided or

will provide notice to defendant, its agents, representatives, retailers and their employees," and (2) "Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices over the past several years." ¶¶ 86–87. These allegations, unsupported by any specific facts, are insufficient to show that Yu provided Dreyer's timely notice of the alleged breach. *See, e.g.*, *Colpitts*, 527 F. Supp. 3d at 589–90 (rejecting substantially similar allegations); *Cosgrove*, 520 F. Supp. 3d at 585 n.11 (same); *Campbell*, 516 F. Supp. 3d at 391, 391 n.12 (same); *Mitchell*, 2022 WL 657044, at *9 (same). Therefore, Dreyer's motion to dismiss Yu's claim for breach of express warranty is granted.

### C.      Breach of Implied Warranty of Merchantability

Under the New York Uniform Commercial Code, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.Y. U.C.C. § 2-314(1). "The implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection . . . ." *Mongiello's Italian Cheese Specialties, Inc. v. Euro Foods Inc.*, No. 14 Civ. 2902 (DF), 2018 WL 4278284, at *37 (S.D.N.Y. Mar. 30, 2018) (quoting *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 433 (2d Cir. 2013)). Significantly, however, "[a] warranty of merchantability . . . does not mean that the product will fulfill a buyer's every expectation but rather simply provides for a minimum level of quality." *Campbell*, 516 F. Supp. 3d at 392 n.14 (internal quotation marks and citation omitted). "Where the sale of a food or beverage is concerned, courts have ruled that the product need only be fit for human consumption to be of merchantable quality." *Id.* (quoting *Marotto v. Kellogg Co.*, No. 18 Civ. 3545 (AKH), 2018 WL 10667923, at *8 (S.D.N.Y. Nov. 29, 2018)).

Here, the FAC does not come close to alleging that the Product is "unfit to be consumed." *Brumfield v. Trader Joe's Co.*, No. 17 Civ. 3239 (LGS), 2018 WL 4168956, at * 3–4 (S.D.N.Y. Aug. 30, 2018). Yu's argument that she has alleged that vegetable oils, unlike chocolate, are "linked to numerous health problems," Doc. 25 at 21, is conclusory and irrelevant, since whether a food is healthful or nutritious is not the standard. Yu's breach of the implied warranty of merchantability fails for the independent reason that she has not alleged timely notice. *Mitchell*, 2022 WL 657044, at *9. Accordingly, Yu's claim for breach of implied warranty is dismissed.

### D.   Magnuson Moss Warranty Act

The MMWA grants relief to a consumer who is damaged by the warrantor's failure to comply with any obligation under a written warranty. *Wilbur v. Toyota Motor Sales, U.S.A., Inc.*, 86 F.3d 23, 26 (2d Cir. 1996) (quoting 15 U.S.C. § 2310(d)(1)). Pursuant to the MMWA, a "written warranty" is defined, in part, as "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(A). As Dreyer's contends,[18] the representations on the Product's label "do not suggest that the [Product is] defect free or that [it] will meet a specified level of performance over a specified period of time; instead, they simply describe the product." *Campbell*, 516 F. Supp. 3d at 393 (collecting cases). Dismissal is also warranted for the

---

[18] Because the Court finds that there is no "written warranty" within the meaning of the MMWA, it need not reach Dreyer's argument that Yu's MMWA claim necessarily fails as a result of her failure to state a claim for breach of express or implied warranty under state law.

independent reason that Yu fails to oppose Dreyer's motion to dismiss her MMWA claim.  *See* Doc. 25.

### E.    Fraud

To state a claim of common law fraud under New York law, a plaintiff must allege that the defendant made "(1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015).  "A claim for common law fraud is subject to the particularity requirements of Federal Rule of Civil Procedure 9(b)," *id.* at 402–03, which requires that the complaint "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Specifically, to meet this requirement, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (citing *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000)).

While a fraud claim may plead scienter generally, the plaintiff "must still allege facts that give rise to a strong inference of fraudulent intent."  *Colpitts*, 527 F. Supp. 3d at 585 (quoting *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 472 (S.D.N.Y. 2020)).  This inference may be established by (1) "alleging facts to show that defendants had both motive and opportunity to commit fraud," or (2) "alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Id.* (quoting *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 353 (S.D.N.Y. 2020)).

Yu's allegations fail to meet the heightened pleading standard under Rule 9(b).[19]  Yu's

sole allegation in support of her fraud claim is that Dreyer's "fraudulent intent is evinced by its

failure to accurately disclose these issues when it knew not doing so would mislead consumers."

¶ 96.  This conclusory allegation, devoid of particularized facts giving rise to an inference of

scienter, is insufficient, because "[t]he simple knowledge that a statement is false is not sufficient

to establish fraudulent intent, nor is a defendants' 'generalized motive to satisfy consumers'

desires [or] increase sales and profits.'"  *Hain Celestial Grp.*, 297 F. Supp. 3d at 337 (quoting *In*

*re Frito–Lay N. Am., Inc. All Nat. Litig.*, No. 12 MD 2413 (RRM) (RLM), 2013 WL 4647512, at

*25 (E.D.N.Y. Aug. 29, 2013)).  "Moreover, while the existence of accurate information

regarding the product's ingredients on the package does not stymie a deceptive labelling claim as

a matter of law, it is certainly a substantial barrier to a plaintiff seeking to plead a claim of fraud."

*Campbell*, 516 F. Supp. 3d at 391.  Here, there is no dispute that the Product's ingredient list

accurately discloses the presence of coconut and vegetable oil in the Product's coating.  Yu's

fraud claim is dismissed.

### F.    Unjust Enrichment

To establish a claim for unjust enrichment under New York law, the plaintiff must allege

that (1) the defendant was enriched; (2) at the plaintiff's expense; and (3) it would be inequitable

to permit the defendant to retain what the plaintiff is seeking to recover.  *Diesel Props S.r.l. v.*

*Greystone Bus. Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011).  However, "[a]n unjust enrichment

claim is not available where it simply duplicates, or replaces, a conventional contract or tort

claim."  *Campbell*, 516 F. Supp. 3d at 394 (quoting *Izquierdo v. Mondelez Int'l, Inc.*, No. 16 Civ.

---

[19] While Dreyer's argues that the fraud claim fails because Yu has not pleaded fraudulent intent, Doc. 24 at 24–25, Yu claims she meets the particularity requirements because she has pleaded the what, who, where, when, and why required under Rule 9(b), Doc. 25 at 21.  Her opposition is not responsive to Dreyer's argument.  Because the Court finds that Yu did not adequately plead fraudulent intent, her arguments are unavailing.

4697 (CM), 2016 WL 6459832, at *10 (S.D.N.Y. Oct. 26, 2016)).  Furthermore, "an unjust

enrichment claim will not survive a motion to dismiss where plaintiffs fail to explain how their

unjust enrichment claim is not merely duplicative of their other causes of action."  *Id.* (quoting

*Hesse*, 463 F. Supp. 3d at 473–74 (internal quotation marks and citation omitted)).  "If a

plaintiff's other claims are defective . . . an unjust enrichment claim cannot remedy the defects."

*Izquierdo*, 2016 WL 6459832, at *10 (internal quotation marks and citation omitted).

As Dreyer's argues, Yu's unjust enrichment claim is duplicative of her other claims.  The

entirety of her unjust enrichment claim reads:  "Defendant obtained benefits and monies because

the Product was not as represented and expected, to the detriment and impoverishment of

plaintiff and class members, who seek restitution and disgorgement of inequitably obtained

profits."  ¶ 97.  Dreyer's is correct that the unjust enrichment claim is wholly premised on and

duplicative of Yu's GBL claims.  *See, e.g.*, *Beers*, 2022 WL 493555, at *7 (dismissing identical

unjust enrichment claim as duplicative); *Colpitts*, 527 F. Supp. 3d at 591–92 (same and collecting

cases); *Cosgrove*, 520 F. Supp. 3d at 587–88 (same).[20]  Yu's unjust enrichment claim is

dismissed.

### G.    Standing to Pursue Injunctive Relief

"Article III, § 2, of the Constitution restricts the federal 'judicial Power' to the resolution

of 'Cases' and 'Controversies.'  That case-or-controversy requirement is satisfied only where a

plaintiff has standing."  *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273

(2008) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)).  "[I]n order to have Article

III standing, a plaintiff must adequately establish:  (1) an injury in fact (*i.e.*, a concrete and

---

[20] Yu argues that to the extent she cannot adequately plead her other claims, she asserts her unjust enrichment claim in the alternative.  However, she fails to allege that her unjust enrichment claim is not duplicative of her other claims.  *Campbell*, 516 F. Supp. 3d at 394 n.15 (dismissing unjust enrichment claim as duplicative where the plaintiff asserted claim in the alternative).

particularized invasion of a legally protected interest); (2) causation (*i.e.*, a fairly traceable

connection between the alleged injury in fact and the alleged conduct of the defendant); and (3)

redressability (*i.e.*, it is likely and not merely speculative that the plaintiff's injury will be

remedied by the relief plaintiff seeks in bringing suit)." *Id.* at 273–74 (internal quotation marks

and alterations omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

To establish the first element of standing – an injury in fact – the plaintiff "must show that

he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized'

and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330,

339 (2016) (quoting *Lujan*, 504 U.S. at 560).

"Although past injuries may provide a basis for standing to seek money damages, they do

not confer standing to seek injunctive relief unless the plaintiff can demonstrate that [he] is likely

to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220,

239 (2d Cir. 2016); *see also Carver v. City of New York*, 621 F.3d 221, 228 (2d Cir. 2010).

"Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or

immediate threat' of injury." *Nicosia*, 834 F.3d at 239 (quoting *City of Los Angeles v. Lyons*, 461

U.S. 95, 111–12 (1983)).  "In a deceptive business practices action under GBL §§ 349 and 350,

the Second Circuit has determined that absent an intent to 'purchase the offending product in the

future,' a plaintiff lacks standing to seek injunctive relief." *Yee Ting Lau v. Pret A Manger (USA)

Ltd.*, No. 17 Civ. 5775 (LAK), 2018 WL 4682014, at *2 (S.D.N.Y. Sept. 28, 2018) (quoting

*Kommer v. Bayer Consumer Health*, 710 F. App'x 43, 44 (2d Cir. 2018)).  Thus, a plaintiff's

failure to allege an actual intent to purchase the product again amounts to a failure to establish a

likelihood of future injury sufficient to show standing.  *Cosgrove*, 520 F. Supp. 3d at 574 (citing

*Lugones*, 440 F. Supp. 3d at 239).

Yu claims that had she known the truth about the Product, she would not have purchased it or would have paid less for it.  ¶ 48.  She further alleges that she "will purchase the Product again when she can do so with the assurance that [the] Product's representations . . . are consistent with its representations."  ¶ 67.  This conditional claim is insufficient to establish standing to pursue injunctive relief for either Yu herself or on behalf of the class.  *See Mitchell*, 2022 WL 657044, at *12.  The Court dismisses Yu's request for injunctive relief.

### H.      Leave to Amend

When a complaint has been dismissed, "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  It is "within the sound discretion of the district court to grant or to deny leave to amend."  *McCarthy v. Dun & Bradstret Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  In *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, the Second Circuit reaffirmed the "liberal spirit" of Rule 15 and counseled strongly against the dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims.  797 F.3d 160, at 190–91 (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (per curiam)).

Yu has already amended the complaint once, after having the benefit of reviewing Defendant's first memorandum of law in support of its motion to dismiss, brought on the same grounds and making the same or similar arguments as the instant motion.  *See* Docs. 15, 24.  While Yu does not propose any specific amendments to cure her pleading deficiencies, she does request leave to file a second amended complaint should Dreyer's motion to dismiss be granted.  Doc. 25 at 22.  In accordance with the liberal spirit of Rule 15, and for the same reasons identified in *Mitchell*, 2022 WL 657044, at *12, the Court grants leave to amend.

## IV.    CONCLUSION

For the reasons discussed above, Dreyer's motion to dismiss is GRANTED.  Yu may file any amended complaint by April 6, 2022.  If she does not, the case will be closed.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 23.

It is SO ORDERED.

Dated:    March 15, 2022
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.